### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRISTATE DEVELOPMENT, LLC | ) | Case No. 25-12552-LSS |
| | ) | Chapter 11 - Jointly Administered |
| Debtor. | ) | |
| -------------------------------------------------- | ) | |
| In re: | ) | |
| | ) | |
| PISCATAWAY BAY HOLDINGS, LLC | ) | Case No. 25-12555-LSS |
| | ) | Chapter 11 |
| Debtor | ) | |

### DEBTOR'S PLAN OF REORGANIZATION

Come now the Debtors-in-possession, Tristate Development, LLC and Piscataway Bay

Holdings, LLC (collectively the "Debtors" or the "Debtors-in-possession"), and propose the following

Plan under § 1123 of Title 11 of the United States Code (the "Bankruptcy Code"). All creditors and

equity security holders should refer to this Plan for information regarding the precise treatment of

their claims or interests. Your rights may be affected. You should read these papers carefully and

discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to

consult one.) This Plan is a proposal by the Debtor and subject to court approval after opportunity for

objections and a hearing.

### Article I:
### Classification of Claims

As required by the Bankruptcy Code, the Plan places claims and equity interests in

various classes and describes the treatment each class will receive.  The Plan also states

whether each class of claims or equity interests is impaired or unimpaired.  A claim or

equity interest can be impaired if the Plan alters the legal, equitable or contractual rights to

which the claimants are otherwise entitled.  If the Plan is confirmed, each creditor's recovery is limited to the amount provided in the Plan.

Only creditors in classes that are impaired may vote on whether to accept or reject the Plan.   A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

**Class 1: Administrative Expenses.** Class 1 claims consist of (i) all Allowed Claims for costs and expenses of administration of the Debtor's Estate, as described in §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including fees of Professional Persons approved by the Court, and (ii) any and all fees payable to the Trustee by the Debtor under 28 U.S.C. §1930(a)(6).

2.2      **Class 2: Secured Tax Claims**.

**Class 2A:**  This Class consists of all Allowed Claims against the Tristate which are secured by a lien on the real property pursuant to Code of Maryland, Tax-Property §14-804(a). Tristate believes that the claims of Prince George's County Maryland are the only Class 2 claims.  Those claims total $21,002.

**Class 2B:**  This Class consists of all Allowed Claims against the PBH which are secured by a lien on the real property pursuant to Code of Maryland, Tax-Property §14-804(a). Tristate believes that the claims of Prince George's County Maryland are the only Class 2 claims.  Those claims total $7,299.

2.3      **Class 3: Other Allowed Priority Claims**. This Class consists of all Allowed Claims against the Debtor that are entitled to priority under §507(a) of the  Bankruptcy Code,

with the exception of § 507(a)(2) administrative claims. The Debtor believes there are no Class 3 claims.

2.4     **Class 4: Allowed Secured Claims of C-Store, Inc.**

This Class is comprised of the Allowed Secured Claims of C-Store, which are secured by liens, and shall be sub-classified as follows:

**Class 4A:** This Class shall consist of the claim of C-Store which is secured by a first deed of trust on the property of Tristate in the sum of an estimated $685,912.

**Class 4B:** This Class shall consist of the claim of C-Store which is secured by a second  deed of trust on the property of Tristate, and a first deed of trust on the property of PBH in the original sum of $150,000.

**Class 4C:** This Class shall consist of the claim of C-Store which is secured by a third deed of trust on the property of Tristate, and a first deed of trust on the property of PBH in the original sum of $ 115,000.

**Class 4D:** This Class shall consist of the claim of C-Store which is secured by a third deed of trust on the property of Tristate in the original sum of $58,000.

2.5     **Class 5: General Unsecured Claims.** This class is comprised of all general unsecured claims, including all general unsecured claims of insiders.  The Debtors believe that the general unsecured claims against Tristate total $339,195.  The Debtors sdo not believe that there are any general unsecured claims against PBH.

2.6     **Class 6: Equity Security Interests.** This Class consists of the equity interests of the member of the Debtor, all of which are held by Lahyan Diab.

**Article II:**
**Treatment of Claims**

Claims against the Estate shall be treated as follows:

3.1      Class 1: Allowed Class 1 Claims shall be paid in full, in cash, on the latest of (a) the Effective Date, or (b) within thirty (30) days after such claim has become an Allowed Claim, or (c) a date agreed upon by the parties. A holder of a Class 1 Claim may agree to less favorable treatment.  By statute, Class 1 is not a class of claims impaired under the Plan.

3.2      Class 2: Prince George's County, as the holder of Allowed Claims in this class shall be paid in full, at the closing, from the proceeds of the sale of the property which secures the claims.  A holder of a Class 2 Claim may agree to less favorable treatment.  Class 2 claims are unimpaired under the Plan.

3.3      Class 3: To the extent that there are any Class 3 claims, the holders of Allowed Claims in this class shall be paid in full on the Effective Date of the Plan, in a sum equal to the allowed amount of their claim. A holder of a Class 3 Claim may agree to less favorable treatment. The Debtor does not believe that there are any claims in this Class. Class 3 claims are unimpaired under the Plan.

3.4      The claims of this Class will be paid in full, from the proceeds of the sale of the property, which secures its claims.  Payments shall be made at closing and from the proceeds of sale. This Class shall retain its lien against the Debtors' property until such claims are paid in full.  This Class shall receive payment in the full amount of its Allowed Claim, including all post-petition interest at the non-default contract rate, fees, costs, advances or charges due under the deed of trust or note secured thereby as provided for in §506(b)) in full at the later of the closing on the sale of the Debtor's property or the allowance of the claim of this Class.  The holder of the Class 4 Claim may agree in writing, in its discretion, to less favorable treatment. The terms and provisions of the Bank's loan documents evidencing, securing, guaranteeing and supporting the Debtors' loan obligation which constitutes the basis

for its Class 4 claim shall remain in full force and effect.  Class 5 is an unimpaired class under the Plan.

       3.5     Class 5:  The Class 5 general unsecured claims shall share, pari passu, in the proceeds of the sale of the properties, after the satisfaction of the Allowed Claims of Classes 1-4.

3.6     Class 6 shall receive no payments from the Debtor but shall retain its equity interests in the reorganized Debtors in the sale percentage as existed onthe Petition Date.

### Executory Contracts and Unexpired Leases.

All unexpired leases and executory contracts existing at the time of the commencement of this case shall be deemed rejected by the Debtor on the Effective Date unless (a) assumed by Order of the Court prior to the Effective Date, (b) specifically assumed pursuant to the terms of the Plan, or (c) otherwise ordered by the Court.

Any Claim arising from the rejection of an unexpired lease or executory contract shall be filed with the Court no later than thirty (30) days after the earlier of the entry of a Final Order approving such rejection or the entry of an Order of Confirmation.  If not timely filed, such Claim shall be forever barred.  Any Allowed Claim arising from the rejection of an unexpired lease or executory contract shall be deemed as a general unsecured claim and paid pursuant to Class 6 of the Plan.

### Article III:
### Means for Implementation of the Plan

The funds necessary to implement the Plan shall be generated from sale of the Debtors' properties. In the event that the Debtors fail to close on a sale of the properties by March 15, 2026, the Debtors shall retain the services of a duly licensed auctioneer to aution the

properties.  The Debtors shall provide all parties-in-interest with ten days notice of the time and location of the auction and the terms thereof.  In order to particeipate in the auction, prospective bidders must deposit the sum of $150,000 which shall be held by Debtors' counsel, pending the outcome of the auction.  The winning bidders deposit shall be held as a sownpayment on the purchase of the properties.  C-Store, Inc. shall be allowed to credit bid at the auction, up the full amount of its claims. Upon the closing on the sale all net proceeds shall be deposited with Debtors' counsel for distribution in accordance with the terms of the Plan, and the successful bidder shall receive title to the properties free and clear of any liens or encumbrances.

### Post-Confirmation Management

After the confirmation of the Plan the Debtor will continue to be managed by its sole member, Lahtan Diab.  Lahyan Diab shall not receive any compensation for his services rendered on behalf of the Debtor.

### Article IV:
### Tax Consequences of the Plan

Because the tax consequences to each creditor can vary depending upon such creditor's particular circumstances, all creditors and other persons affected by the Plan should consult their own tax advisor for a complete analysis of the tax consequences resulting from the confirmation of the Plan.

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated

rules which make it difficult to state completely and accurately all the tax implications of any action.

Generally, a holder of a Claim which is subject to taxation in the United States (a "Taxpayer-Claimant") will realize income or loss for federal and state income tax purposes if its Claim is paid, unless such income or loss has previously been recognized, to the extent that such a payment would have created income or loss if paid by the Debtor outside the jurisdiction of the Bankruptcy Court.  A Taxpayer-Claimant which receives nothing or less than the full amount with respect to its Claim will realize a loss for federal and state income tax purposes to the extent that the Taxpayer-Claimant's tax basis in the Claim exceeds its recovery, except to the extent that a loss with respect to such Claim has previously been recognized.

### Article VI:
### Effect of Confirmation

The Bankruptcy Code provides:

If the Plan is confirmed under § 1141, "the provisions of a confirmed plan bind the Debtor, creditors and equity holders whether or not such interest is impaired ans whether or not such interest has accepted the plan.  As the Debtor has proposed a liquidating plan, §1141(b)(3) provides that the confirmation of the Debtor's plan will not discharge the Debtor.

### Article VII:
### General Provisions

**A.  General Rules of Interpretation.**   For purposes of this Plan, the following rules of interpretation apply:

(a)  Except as otherwise provided herein, this Plan shall be construed in conformance with § 102 of the Bankruptcy Code. Whenever it is appropriate because of the form or the context, each term whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender. Any term used in capitalized form in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(b)  Any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions. Any reference in the Plan to an existing document or exhibit filed, or to be filed, means such document or exhibit, as it may have been or may be amended, modified or supplemented.

(c)  Captions and headings in articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. Unless otherwise specified, all references in the Plan to sections, articles or exhibits are references to sections, articles and exhibits of or to the Plan.

(d)  Any exhibits attached hereto are incorporated into and are a part of the Plan as if fully set forth in the Plan.

(e)  In computing any period of time prescribed or allowed by the Plan,  the provisions of Bankruptcy Rule 9006(a) shall apply. Any period of time

prescribed or allowed by the Plan may be enlarged or reduced by the Bankruptcy Court in accordance with the provisions of Bankruptcy Rule 9006(b) or ©.

**B. Payment as Release**. The tender of full payment to the holder of an Allowed Claim in any class as provided for under the Plan shall be deemed to effect a settlement, release, and discharge of the Debtor by such holder on behalf of itself and its successors and assigns.

**C.  Post- Confirmation Notices.**  Any notice required or permitted to be provided under the Plan shall be provided to the Office of the United States Trustee, to any party entitled to notice pursuant to Bankruptcy Rule 2002, and to any party directly affected by the action to be taken. Any notices or requests in connection to this Plan shall be served in writing and shall be served either by hand, first-class mail, postage prepaid, or electronically to:

> Office of the U.S. Trustee
> 6305 Ivy Lane, Suite 600
> Greenbelt, MD 20770
>
> Steven H. Greenfeld, Esq.
> Law Offices of Steven H. Greenfeld, LLC
> 325 Ellington Boulevard, #610
> Gaithersburg, MD   20878

**D**.  Governing Law.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Maryland, without giving effect to the principles of conflicts of law of such jurisdiction.

**E. Closing Case.** When the Plan is fully administered as described in Bankruptcy Rule 3022 and Local Bankruptcy 3022-1, or as otherwise permitted by the Court, the Debtor may move the Court to close this case.

**F. <u>Further Assurances</u>.** The Debtor shall execute such other loan documents and instruments to the Debtor and the creditors deem reasonably necessary to effectuate the terms and purposes of the Plan in accordance with the Bankruptcy Code and the Bankruptcy Rules.

Dated: September 11, 2025

TRISTATE DEVELOPMENT, LLC
PISCATAWAY BAY HOLDINGS, LLC
by and through counsel

LAW OFFICE OF
STEVEN H. GREENFELD, LLC

By:   _/s/ Steven H. Greenfeld_
Steven H. Greenfeld, Esq.
325 Ellington Boulevard
Greenbelt, MD   20878
(301) 881-8300
Steveng@cohenbaldinger.com
*Counsel for the Debtors-in-Possession*