**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRISTATE DEVELOPMENT, LLC | ) | Case No. 25-12552-LSS |
| | ) | Chapter 11 - Jointly Administered |
| Debtor. | ) | |
| ------------------------------------------------- | ) | |
| In re: | ) | |
| | ) | |
| PISCATAWAY BAY HOLDINGS, LLC | ) | Case No. 25-12555-LSS |
| | ) | Chapter 11 |
| Debtor | ) | |

**DISCLOSURE STATEMENT FOR**
**PLAN OF REORGANIZATION**
**PROPOUNDED BY THE DEBTOR-IN-POSSESSION**

COME NOW the Debtors-in-Possession, Tristate Development, LLC ("Tristate") and Piscataway Bay Holdings, LLC ("PBH"), by and through counsel, Law Offices of Steven H. Greenfeld, LLC, and provides the following Disclosure Statement to provide creditors with sufficient information to make an informed decision regarding their Plan of Reorganization.

**ARTICLE I:**
**INTRODUCTION**

Tristate and PBH (collectively the "Debtors" or the "Debtors-in-Possession"), by its undersigned counsel, pursuant to the provisions of Chapter 11 of Title 11 of the United States Code, file this Disclosure Statement to disclose the information believed to be material for creditors to arrive at a reasonably informed decision and to exercise the right to vote on acceptance of the Debtors' Plan of Reorganization (the "Plan") filed by the Debtors with the United States Bankruptcy Court for the District of Maryland on September 11, 2025.

This Disclosure Statement is required by Chapter 11 of the Bankruptcy Code. Its purpose

is to provide creditors and other parties in interest in this case with sufficient information to enable them to make an informed decision as to whether to accept or reject the Plan that has been filed with the Court.  The requirements for approval of this Disclosure Statement are set forth in §1125 of the Bankruptcy Code.

If, after reading this Disclosure Statement, you believe that it does not give you sufficient information upon which to base your choice of accepting or rejecting the Plan, you may file an objection to the adequacy of the Disclosure Statement, stating what information you believe to be missing, or what facts or other information are not adequately presented.  You are entitled to, and may insist upon, the degree and detail of information that a reasonably prudent investor would have a right to expect before making a decision to invest.

Your objection must be specific and filed with the Clerk of the Bankruptcy Court. A copy must be mailed to the undersigned.  The Court may hold a hearing upon your objection, or may rule upon the contents of your objection and any accompanying memorandum, and the contents of any responses to your objection.

As a creditor or interest holder your vote is important.  The Plan can be confirmed by the Court if it is accepted by the holders of two-thirds (2/3) in amount and more that one half (½) in number of claims in each impaired class of claims voting on the Plan, and if it is accepted by the holders of two-thirds (2/3) in amount of interests in each impaired class of equity interests voting on the Plan.  In the event the requisite acceptances are not obtained, the court may nevertheless confirm the Plan if the court finds that it accords fair and equitable treatment of the class or classes rejecting it and that it provides at least the minimum treatment and distribution required by the Bankruptcy Code.

2

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO THE VALUE OF ITS ASSETS) ARE AUTHORIZED, OTHER THAN AS SET FORTH IN THIS AMENDED DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE  OF THE PLAN THAT ARE NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY CREDITOR AND SHOULD BE REPORTED TO UNDERSIGNED COUNSEL FOR THE DEBTOR.  THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE RECORDS KEPT BY THE DEBTOR ARE NOT WARRANTED OR REPRESENTED TO BE WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL RECORDS ARE ACCURATE.

## ARTICLE II:
## BACKGROUND INFORMATION

**II.     History and Background of the Debtor**

**A.  History**

1.      Background

The Debtors are Maryland limited liability companies formed to acquire and hold the real property in Prince George's County Maryland.  PBH holds 7 lots in Fort Washington MD.  It has held those lots since the late 1990's.

Tristate was formed to purchase and hold raw land in Brandywine MD that it purchased around 2006.  The land was purchased for approximately $660,000.  In 2017, Tristate decided to create value in the property which was at that point worth less than the purchase price.  Bohler Engineering ("Bohler")  was retained to create a subdivision with maximum possible lot yield.  A

loan was taken from C-Store, Inc. ("C-Store") to facilitate that project.  The process took much longer than anticipated and an entire year was lost due to the global covid pandemic.  Despite the pandemic, Tristate made debt service payments for over a year.  The subdivision plan was finally approved by the county but there remained statutory deadlines in order to record the final plat of lots officially, and additional engineering was required on order to meet those deadlines.

The Debtor identified a potential purchaser for the Tristate lots and months of contract negotiations ensued.  A sales contract was entered into with a purchaser in May 2022.  That contract provided for an initial payment in September of 2022 which would have been large enough to pay off the all the debt owed to C-Store.  As a result of the failure of the engineer not providing study materials to the purchaser, the study period was extended 45 days.  During this extension, the cost of building materials increased substantially and the purchaser terminated the contract.

Upon the termination of the contract, Tristate retained a specialized commercial real estate firm to assist in selling the property.  A new purchaser was identified in May 2023 at a significantly reduced price, but still sufficient to satisfy the outstanding debt. In January of 2024 a contract was entered into with the second proposed purchaser.  During the purchaser's study period, it identified that a strip of land that Bohler had previously identified and had deeded to Tristate sometime in 2023 was in fact incorrect.  A meeting was setup with Bohler and their team of surveyors and engineers and the buyer's team of engineers, surveyors and legal.  In that meeting Bohler agreed with the Buyer that the strip of land original ownership was not only misidentified but also mis-plotted by Bohler.  As a result of this error, Tristate's property was land-locked.  With the property land-locked it's value obviously plummeted.

During this time, Tristate was only able to pay debt service because of loans for Kelly Diab, the wife of the sole member of Tristate.  As a result of C-Store's refusal to extend its note without a large up-front payment, the land-locked issue, and the pending county deadlines, the second purchaser terminated his contract.

2.      Cause of Chapter 11 Filing

Pursuant to the terms of the recorded deed of trust (the "Deed of Trust" ), the Debtor pledged the Property described in the Deed of Trust to secure a loan from Shore United Bank (the "Bank").  As a result of the Debtors inability to service the debt, the Debtor defaulted on its payment obligations to the C-Store, and C-Store commenced foreclosure proceedings against the Debtors' properties.  The Debtor filed this bankruptcy proceeding to stop the foreclosure and to provide the Debtor with the time to continue to market the Property for sale and to attempt to liquidate the Property for full fair market value.

**B.     Bankruptcy Filing**

The Debtors sought protection under the Bankruptcy Code by filing a Voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code on March 3, 2025 (the "Petition Date").

**C.     Chapter 11 Operations**

Since the filing of the Chapter 11 petition, the Debtors have continued to manage their affairs as Debtors-in-Possession.

1.      Retention of Professionals

Since the Petition Date, the Debtor has retained, with Court approval, the Law Office of Steven H. Greenfeld, LLC, as its general bankruptcy counsel.

2.      Joint Administration

5

On April 1, 2015, pursuant to a motion filed by the Debtors, this Court authorized the joint administration of the Debtors' cases.

       3.   <u>United States Trustee</u>

Based on the Debtors' failure to file monthly operating reports and to pay quarterly fees, the United States Trustee filed a motion seeking the dismissal of these case or their conversion to one under Chapter 7.  The Debtors have filed the missing reports and paid the quarterly fees. The Debtors and the United States Trustee entered into a consent order requiring the Debtor to remain current on those obligations and the Debtors have complied with that consent order.

       4.   <u>Administrative Responsibilities</u>

The Debtors are current with the filing of their Debtor-in-Possession Monthly  Operating Reports and the payment of their quarterly fees.

       5.   <u>Creditor's Plan of Reorganization.</u>

C-Store has filed a creditor's Plan which, if confirmed, requires an auction of the Tristate property on the 11th day after the entry of an order confirmed.

**D.**    **<u>Balance Sheet Information</u>**

       1.   <u>Assets of the Estate</u>

| Description of Asset | Fair MarketValue |
|---|---|
| Real Property: | |
| Tristate property: 37.548 acres Lusby Lane, Brandywine, Md | $1,600,000 |
| PBH property: Lots 4 - 10 Section 1, Piscataway Bay Cedar Avenue, Fort Washington, Md | $  525,000 |
| Total | $2,125,000 |

6

2.      Liabilities of the Estate
        Secured Claims
        PBH obligations:

| | |
|---|---|
| C-Store, Inc. - first deed of trust | $  150,000[1] |
| C-Store, Inc. - second deed of trust | $  115,000[2] |
| C-Store, Inc. - third deed of trust | $   58,000 |
| Prince George's County, Md (real property taxes) | $    7,299 |
| General Unsecured Debt | (None) |

Tristate obligations:

| | |
|---|---|
| C-Store, Inc. - first deed of trust | $  685,912 |
| C-Store, Inc. - second deed of trust | $  150,000 |
| C-Store, Inc. - third deed of trust | $  115,000 |
| Prince George's County, Md (real property taxes) | $  150,000 |
| General Unsecured Debt | $  339,195 |

## ARTICLE III:
## The Plan of Reorganization

SET FORTH BELOW IS A BRIEF SUMMARY OF THE PLAN. THE SUMMARY SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. CREDITORS ARE URGED TO READ THE ENTIRE PLAN AND TO CONSULT WITH COUNSEL OR EACH OTHER TO FULLY UNDERSTAND THE PLAN. A COPY OF THE PLAN HAS BEEN FILED WITH THE CLERK, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND, 6500 CHERRYWOOD LANE, GREENBELT, MARYLAND, 20770, AND IS AVAILABLE FOR INSPECTION AND REVIEW.

THE PLAN IS COMPLEX AND REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTOR AND ITS  CREDITORS.  AN INFORMED JUDGMENT CONCERNING THE PLAN, THEREFORE, CANNOT BE MADE WITHOUT READING AND UNDERSTANDING IT.

The Plan is based upon the belief that the reorganization of the Debtor, through the sale of its Property will generate significantly more funds for repayment of creditors than if the bankruptcy case were converted to a Chapter 7 liquidation.

---

[1] Both PBH and Tristate are liable for this debt.

[2] Both PBH and Tristate are liable for this debt.

1.01 **Allowed Claim** means a claim (as defined in §101(5) of the Bankruptcy Code):

(a)     in respect of which a proof of claim has been filed with the Court within the applicable period of limitations fixed by Bankruptcy Rule 3003;

(b)     which is listed in Schedules D, E or F filed by the Debtor with the Court, including any amendments thereto, and is not listed as disputed, contingent, or unliquidated as to amount; or

(c)     or which an application has been filed pursuant to §§329 and 330 of the Bankruptcy Code;

(d)     and further, as to any such claim, either no objection to the allowance thereof has been filed, or if an objection to the allowance thereof has been filed, the Court has overruled such objection or fixed the amount of such claim by a Final Order.

1.02 **Bankruptcy Code** means Title 11 of the United States Code (U.S.C.) as in effect on the Petition Date or as thereafter amended.

1.03 **Bankruptcy Rule(s)** means

(a)     the Federal Rules of Bankruptcy Procedure, and

(b)     the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Maryland, both as in effect on the Petition Date or as thereafter amended.

1.04 **Claim** means a claim against the Debtor as defined in §101(5) of the Bankruptcy Code, including, but not limited to, all claims arising from the rejection of unexpired leases and/or executory contracts.

1.05 **Confirmation Date** means the date on which the Court enters the Order of

Confirmation.

1.06 **Court** means the United States Bankruptcy Court for the District of Maryland.

1.07 **Debtors** means Tristate Development, LLC and Piscataway Bay Holdings collectively, both of which are Maryland limited liability companies.

1.08 **Disputed Claim** means (a) a Claim as to which an objection has been filed in accordance with Rule 3007 of the Bankruptcy Rules, which has not been resolved by a Final Order; and (b) a claim listed in the Schedules as disputed, contingent or unliquidated and as to which no Proof of Claim has been filed.

1.09 **Effective Date** means the earlier of the (i) the date of closing on the sale of the Tristate's property in Brandywine, Maryland, and (ii) March 1, 2026.

1.10 **Equity Interests** mean any and all membership interests of the Debtors.

1.11 **Final Order** means a Court order that, not having been reversed, modified or amended, and not having been stayed, and as to which the time to seek review or rehearing of has expired, has become final and is in full force and effect.

1.12 **Insider** has the meaning set forth in § 101(31) of the Bankruptcy Code.

1.13 **Order of Confirmation** means the order entered by the Court confirming the Plan.

1.14 **Petition Date** means March 25, 2025, the date on which the Debtors filed their Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code.

1.15 **Plan** means this Plan of Reorganization, or as hereafter amended, or modified.

1.16 **Proof of Claim** means a proof of claim filed pursuant to § 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.17 **Secured Claim** means an Allowed Claim that is secured by a valid, perfected,

enforceable lien on or security interest in any of the Debtor's Property to the extent of the value of the claimant's interest in the Debtor's Property.

    B.    <u>Classes</u>

The Plan, in Articles II and III, classifies and treats Claims as follows:

The claims against the Estate shall be classified and treated as follows:

2.1    **Class 1: Administrative Expenses.** Class 1 claims consist of (i) all Allowed Claims for costs and expenses of administration of the Debtor's Estate, as described in §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including fees of Professional Persons approved by the Court, and (ii) any and all fees payable to the Trustee by the Debtor under 28 U.S.C. §1930(a)(6).

2.2    **Class 2: Secured Tax Claims**.

**<u>Class 2A:</u>** This Class consists of all Allowed Claims against the Tristate which are secured by a lien on the real property pursuant to Code of Maryland, Tax-Property §14-804(a). Tristate believes that the claims of Prince George's County Maryland are the only Class 2 claims. Those claims total $21,002.

**<u>Class 2B:</u>** This Class consists of all Allowed Claims against the PBH which are secured by a lien on the real property pursuant to Code of Maryland, Tax-Property §14-804(a). Tristate believes that the claims of Prince George's County Maryland are the only Class 2 claims. Those claims total $7,299.

2.3    **Class 3: Other Allowed Priority Claims**. This Class consists of all Allowed Claims against the Debtor that are entitled to priority under §507(a) of the Bankruptcy Code, with the exception of § 507(a)(2) administrative claims. The Debtor believes there are no Class 3 claims.

2.4     **Class 4: Allowed Secured Claims of C-Store, Inc.**

This Class is comprised of the Allowed Secured Claims of C-Store, which are secured by liens, and shall be sub-classified as follows:

**Class 4A:** This Class shall consist of the claim of C-Store which is secured by a first deed of trust on the property of Tristate in the sum of an estimated $685,912.

**Class 4B:** This Class shall consist of the claim of C-Store which is secured by a second deed of trust on the property of Tristate, and a first deed of trust on the property of PBH in the original sum of $150,000.

**Class 4C:** This Class shall consist of the claim of C-Store which is secured by a third deed of trust on the property of Tristate, and a first deed of trust on the property of PBH in the original sum of $ 115,000.

**Class 4D:** This Class shall consist of the claim of C-Store which is secured by a third deed of trust on the property of Tristate in the original sum of $58,000.

2.5     **Class 5: General Unsecured Claims.** This class is comprised of all general unsecured claims, including all general unsecured claims of insiders.  The Debtors believe that the general unsecured claims against Tristate total $339,195.  The Debtors sdo not believe that there are any general unsecured claims against PBH.

2.6     **Class 6: Equity Security Interests.** This Class consists of the equity interests of the member of the Debtor, all of which are held by Lahyan Diab.

**Article 3:**
**Treatment of Claims**

Claims against the Estate shall be treated as follows:

3.1     Class 1: Allowed Class 1 Claims shall be paid in full, in cash, on the latest of (a) the Effective Date, or (b) within thirty (30) days after such claim has become an Allowed Claim, or (c) a date agreed upon by the parties. A holder of a Class 1 Claim may agree to less favorable treatment.  By statute, Class 1 is not a class of claims impaired under the Plan.

3.2     Class 2: Prince George's County, as the holder of Allowed Claims in this class shall be paid in full, at the closing, from the proceeds of the sale of the property which secures the claims.  A holder of a Class 2 Claim may agree to less favorable treatment.  Class 2 claims are unimpaired under the Plan.

3.3     Class 3: To the extent that there are any Class 3 claims, the holders of Allowed Claims in this class shall be paid in full on the Effective Date of the Plan, in a sum equal to the allowed amount of their claim. A holder of a Class 3 Claim may agree to less favorable treatment. The Debtor does not believe that there are any claims in this Class. Class 3 claims are unimpaired under the Plan.

3.4     The claims of this Class will be paid in full, from the proceeds of the sale of the property, which secures its claims.  Payments shall be made at closing and from the proceeds of sale. This Class shall retain its lien against the Debtors' property until such claims are paid in full.  This Class shall receive payment in the full amount of its Allowed Claim, including all post-petition interest at the non-default contract rate, fees, costs, advances or charges due under the deed of trust or note secured thereby as provided for in §506(b)) in full at the later of the closing on the sale of the Debtor's property or the allowance of the claim of this Class.  The holder of the Class 4 Claim may agree in writing, in its discretion, to less favorable treatment. The terms and provisions of the Bank's loan documents evidencing, securing, guaranteeing and

supporting the Debtors' loan obligation which constitutes the basis for its Class 4 claim shall remain in full force and effect.  Class 5 is an unimpaired class under the Plan.

3.5     Class 5:  The Class 5 general unsecured claims shall share, pari passu, in the proceeds of the sale of the properties, after the satisfaction of the Allowed Claims of Classes 1-4.

3.6     Class 6 shall receive no payments from the Debtor but shall retain its equity interests in the reorganized Debtors in the sale percentage as existed onthe Petition Date.

C.     Plan Execution

The Plan, in Article 4, provides for execution as follows:

1.     Funding.  The funds necessary to implement the Plan shall be generated from sale of the Debtors' properties. In the event that the Debtors fail to close on a sale of the properties by March 15, 2026, the Debtors shall retain the services of a duly licensed auctioneer to aution the properties.  The Debtors shall provide all parties-in-interest with ten days notice of the time and location of the auction and the terms thereof.  In order to particeipate in the auction, prospective bidders must deposit the sum of $150,000 which shall be held by Debtors' counsel, pending the outcome of the auction.  The winning bidders deposit shall be held as a sowndownpayment on the purchase of the properties.  C-Store, Inc. shall be allowed to credit bid at the auction, up the full amount of its claims. Upon the closing on the sale all net proceeds shall be deposited with Debtors' counsel for distribution in accordance with the terms of the Plan, and the successful bidder shall receive title to the properties free and clear of any liens or encumbrances.

2.     Retained Rights and Powers.  Upon confirmation of the Plan, the Debtor shall retain all of its rights and powers under the Bankruptcy Code, including, but not limited to, the right to prosecute all avoidance actions and other causes of actions and all  other rights and powers under

13

§§ 505, 506, 541, 542, 543, 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code.  The

Debtor does not believe any such claims exist.

3.  <u>Equity Ownership</u>.  The membership interests in the Debtor as of the Effective Date

shall be retained in such proportions as the existing prepetition interests.

4.  <u>Distributions</u>.  Distributions to holders of Allowed Claims shall be made

to the address set forth on the respective Proof of Claim filed by each such holder; (b) to the address

set forth in any subsequent written notice of change of address filed with the Court and served on

the Debtor; or (c) to the address reflected in the Schedules if no Proof of Claim or notice of change

of address is filed. A distribution payment that is made within thirty (30) days of any date specified

in this plan shall be deemed timely.

6.  <u>The Reorganized Debtors.</u>  The reorganized Debtors shall be responsible after the

Effective Date for the making and implementation of all business decisions necessary and consistent

with consummating the Plan. The reorganized Debtors may designate, elect or appoint one or more

members, officers or managers to take actions on behalf of the reorganized Debtors following the

Effective Date, and may adopt and implement, and otherwise create, organizational documents,

operating agreements and procedures as it deems necessary and appropriate in accordance with

applicable non-bankruptcy law.

7.  <u>Post-Confirmation Management</u>.  The reorganized Debtors will continue to be managed

by the member of the Debtors, Lahyan Diab.

8.  <u>Recordation Taxes</u>.  Pursuant to §1146(c) of the Bankruptcy Code, the issuance, transfer

or exchange of any notes or equity securities under the Plan, sales of the Debtor s assets, the creation

of any mortgage, deed of trust or other security interest, the making or assignment of any lease or

14

sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any loan documents or instruments evidencing any credit facility or extension of credit contemplated under the Plan; the sale of all or part of the property; any contracts for the sale of all or part of the property entered into prior to plan confirmation, but which do not close until after confirmation; any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan; or issuance of equity interests in the reorganized and newly constituted Debtor, shall not be subject to any stamp, real estate transfer (including, without limitation, any agricultural transfer taxes), recapture, mortgage recording or other similar tax.

9.    <u>Sales Free and Clear of Liens, Claims and Encumbrances</u>.  Any sales made pursuant to the plan, as described above, shall be made free and clear of any liens, claims, or encumbrances including, but not limited to, liens held by the Bank and Queen Anne's County.  These liens shall attach to the sale proceeds until their respective claims are paid in full, as further described above.

C.    <u>Executory Contracts and Unexpired Leases</u>

The Plan rejects all unexpired leases and executory contracts on the Effective Date. unless (a) assumed by Order of the Court prior to the Effective Date, (b) specifically assumed pursuant to the terms of the plan, or (c) otherwise ordered by the Court.

Any claims arising from the pre-confirmation rejection of an unexpired lease or an executory contract shall be filed with the Court no later than thirty (30) days after the entry of a Final Order approving such rejection. If not timely filed, such Claim shall be forever barred. Any Allowed Claim arising from the rejection of an unexpired lease or executory contract shall be deemed a Class 5 claim.

D.  Disputed Claims

The Plan provides that no distribution shall be made under this Plan on account of any Disputed Claim unless and until such claim becomes an Allowed Claim. No pre-petition claims shall be paid by the Debtor outside of the Plan except as otherwise indicated in the Plan.

After the Confirmation Date, unless otherwise ordered by the Court after notice and a hearing, the Debtor shall have the right to make and file objections to Claims and shall serve a copy of each objection upon the holder of such Claim to which the objection is made. Objections to Claims shall be filed within sixty (60) days after the Effective Date. The Debtor shall retain the discretion to litigate such objection to a final determination in the Court or to elect to compromise, settle, or otherwise resolve any such objection subject to approval thereof of the Court. The Debtor may, at anytime, request that the Court estimate any Disputed Claim pursuant to §502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such claim, and the Court will retain jurisdiction to estimate any such claims at anytime. On or after the Confirmation Date, any claims which have been estimated may subsequently be compromised, settled, withdrawn or otherwise resolved subject to approval by the Court.

If, on or after the Effective Date, any Disputed Claim is allowed, the Debtor shall distribute to the holder of such Claim, within a reasonable time, the amount that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date without interest or present value adjustment.

E.    Effect of Plan Confirmation

Upon the confirmation of the Plan, the provisions thereof shall bind any holder of a Claim against, or an interest in, the Debtor, whether or not such Claim or interest of such holder is

16

impaired under this Plan and whether such holder has accepted this Plan. Except as otherwise provided in the Plan or in the Confirmation Order, confirmation of the Plan shall act as a discharge and dismissal effective as of the Effective Date of all claims against the Debtors that arose at any time before the Confirmation Date, and confirmation of the plan shall also constitute an injunction against any action or proceeding (whether directly, indirectly, derivatively or otherwise) by or on behalf of the holder of any claim discharged above seeking to collect a claim from or against the Debtors or the reorganized Debtors in any manner other than as specified in the plan, so long as the Debtors does not materially default under the plan. During the period after the confirmation of the plan, but prior to the Effective Date, the Debtor shall continue to operate and manage the properties.

F.  Plan Modification

The Debtors reserve the right, in  accordance with the Bankruptcy Code, to amend or modify the plan or the treatment of any Claim prior to the Confirmation Date. Subsequent to the Confirmation Date, the Debtors may amend or modify the Plan, or any portion thereof applicable to the Debtors, in accordance with §1127(b) of the Bankruptcy Code, or remedy any defect or omission, or  reconcile any inconsistency in the Plan, in such a manner as may be necessary to carry out the purpose and intent of the Plan.

G.  Jurisdiction Provisions

Until the Effective Date, the Court shall retain jurisdiction over the Debtors and its assets. Notwithstanding the entry of an Order of Confirmation, the Court will retain jurisdiction as described below until a final closing of these cases to ensure that the requirements, purposes and intent of the plan are carried out. The Debtors reserve the right to reopen the pending bankruptcy case, if closed; however, in the event the Court declines to reopen the bankruptcy case, the Debtorsr

reserve the right to raise all such issues in any proceedings in Maryland state court with jurisdiction. The Court's jurisdiction shall be over any and all disputes and litigation pending at the Confirmation Date, any controversies that may arise thereafter, and any controversies that may affect the Debtors ability to effectuate the consummation of the Plan.

H.    Risk Factors

Because the primary source of funding of the Plan comes from the proceeds generated from a sale of the properties, one of the risk factors in this case is that the Debtors are unable to sell their properties or the winning bidder at auction fails to close on the sale.    J.    I.    Litigation and Avoidance Actions

All litigation pending in other tribunals has been stayed by these bankruptcy cases. Upon confirmation of the Plan, the Debtor shall retain the sole and exclusive right and power to bring actions and assert rights under §§ 505, 506, 541, 542, 543,544,547,548,549,550 and  553 of the Bankruptcy Code, as well as any other rights and powers conferred upon a debtor-in-possession by the Bankruptcy Code. While the Debtors retain the right to bring any avoidance actions against any party, the Debtors believe that there are no avoidable transfers that would generate funds for the reorganized Debtor. Lastly, the Debtor will review all proofs of claim in order to determine whether to file any objections to claims.

J.    Creditors' Committee

No Creditors Committee was appointed in this case.

K.    Voting On The Plan And Confirmation

Voting on acceptance or rejection of the Plan will be governed by the provisions of the Bankruptcy Code.  Each voting creditor will be supplied with an official  ballot, in a form

18

prescribed by the Court. Creditors may vote to accept or reject the Plan by returning a completed ballot to the undersigned counsel for the Debtor as instructed on the ballot. A class of creditors will be considered to have accepted the Plan (a) if it is accepted by creditors holding at least two-thirds (2/3) in amount, and more than one-half (½) in number of the allowed Claims of each class that has voted, or (b) if the class is unimpaired within the meaning of the Bankruptcy Code.

After the time for voting on the Plan passes, the Court will hold a hearing and rule on confirmation of the Plan in accordance with the Bankruptcy Code. If all requirements for confirmation of the Plan under the Bankruptcy Code are satisfied, except that the Plan is not accepted by one or more classes of creditors, the Court may confirm the Plan without the acceptance of creditors if the Court finds that the Plan does not discriminate unfairly, and is fair and equitable (within the meaning of the Bankruptcy Code) with respect to any class of creditors that does not accept the Plan.

 L. <u>Alternatives To The Plan Of Reorganization</u>

Creditors will receive a greater distribution under the Plan than in a Chapter 7 liquidation. In the event that the Plan is not confirmed and this case is converted to Chapter 7, there would be additional administrative expenses consisting of Trustee commissions, the fees and expenses incurred by the Trustee s professionals.  In addition, the bankruptcy estate would lose the ability to take advantage of the provisions of §1146(c) and thereby avoid the payment of any transfer and/or recordation taxes on the sale of the properties.  The Debtor sets forth the following liquidation analysis based on its best information, knowledge and belief as follows:

|  | | Chapter 7 liquidation | Per Chapter 11 Plan |
|---|---|---|---|
| Gross proceeds - sale of real property | | $ 2,125,000 | $2,125,000 |
| Less: | Recordation and transfer taxes | (42,500) | 0 |
| | Other closing costs | ( 5,000) | (5,000) |

| | | |
|---|---|---|
| Realtor/auctioneer fees (5%) | (106,250) | 0 |
| Chapter 7 Trustee compensation | (71,250) | 0 |
| U.S. Trustee quarterly fees | 0 | (1,700) |
| Net proceeds available | $ 1,900,000 | $ 2,118,300 |

As evidence by the above chart, the net proceeds available to pay creditors in a Chapter 11 sale is more than $200,000 greater than creditors could expect to receive in a Chapter 7 liquidation.

M.    Conclusion

This Disclosure Statement is only a summary of the Plan and creditors are urged to read the Plan for full details of the treatment of claims. The Debtor believes that the proposed Plan is feasible, and in the best interests of the creditors.  The Debtor, therefore, recommends acceptance of the Plan by creditors.

Dated: September 11, 2025

TRISTATE DEVELOPMENT, LLC
PISCATAWAY BAY HOLDINGS, LLC
by and through counsel

LAW OFFICE OF
STEVEN H. GREENFELD, LLC

By:   /s/ Steven H. Greenfeld
        Steven H. Greenfeld, Esq.
        325 Ellington Boulevard
        Greenbelt, MD   20878
        (301) 881-8300
        Steveng@cohenbaldinger.com
        *Counsel for the Debtors-in-Possession*